IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

```
                             :
PAUL PERAZA,                 :
          Plaintiff          :
                             :
     v.                      :   CIVIL NO.3:CV-12-1306
                             :
                             :   (Judge Conaboy)
N. HELTON, ET AL.,           :
          Defendants         :
```
_____

**MEMORANDUM**
**Background**

Paul Peraza, an inmate presently confined at the United States Penitentiary, Beaumont, Texas initiated this pro se combined Bivens[1]-type civil rights and Federal Tort Claims Act (FTCA)[2] action while confined at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg).  An Amended Complaint (Doc. 45) was subsequently filed.

Plaintiff raises multiple claims relating to the medical treatment which he has received while incarcerated at the

_____

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

[2] The FTCA provides a remedy in damages for the simple negligence of employees of the United States.  See United States v. Muniz, 374 U.S. 150, 150 (1963).

1

following federal correctional facilities: USP-Lewisburg; the United States Penitentiary, Big Sandy, Inez, Kentucky (USP-Big Sandy); the Canaan United States Penitentiary, Waymart, Pennsylvania (USP Canaan); the United States Penitentiary, Florence, Colorado (USP-Florence); and the Allenwood United States Penitentiary, White Deer, Pennsylvania (USP-Allenwood).  Named as Defendants are the United States of America; and the following medical staff members of USP-Big Sandy; N. Helton, P. Cruz, S. Bhadra, Health Services Administrator P. Runyon, and D. Spradlin. Peraza is also proceeding against five USP-Allenwood staff members: J. Holtzapple, B. Buschman, K. Pigos, Ivan Navarro, and Francis Fasciana.  Also named as Defendants are two USP-Cannaan staff: K. Kaiser and Holloway.  The remaining Defendants are USP-Lewisburg Administrative Remedy Coordinator Nevill, and USP-Florence employees D. Allred and B. Cink.

Plaintiff states that he was stabbed 7 times on or about February 20, 2008 while confined at USP-Big Sandy.  Following that incident, Peraza was taken to an outside hospital for treatment of his injuries which included a fractured scapula and a punctured left lung.  <u>See</u> Doc. 45, p. 8.  The Amended Complaint initially contends that although follow up treatment[3] was recommended and

---

[3]  Allegedly Plaintiff was informed by the outside physician who treated him, Doctor Steel, that he should undergo a followup orthopedic evaluation so that a determination could be made as to whether corrective surgery should be performed on his scapula.

2

Plaintiff made numerous complaints of pain, follow up care was not provided prior to his July 14, 2008 transfer to USP-Lewisburg.

Upon his arrival at USP-Lewisburg, Plaintiff's complaints about his scapula injury resulted in the prisoner being given Ibuprofen for pain and the taking of an x-ray.  However, he was not seen by a specialist or provided with the follow up care which had been previously recommended during his stay at USP-Big Sandy. On March 24, 2009, Plaintiff was transferred to USP-Allenwood. While at that facility, Peraza  continued to raise complaints regarding his alleged need for further treatment for his scapula which were allegedly ignored.

On or about April 28, 2011, Plaintiff was transferred to USP-Canaan where he again purportedly voiced medical complaints. While at USP-Canaan, Peraza was admittedly prescribed Naproxin for pain.  However, he was purportedly refused other needed treatment. Plaintiff was sent back to USP-Lewisburg on August 11, 2011. Following a September 23, 2011 x-ray, Peraza was scheduled to see an orthopedic specialist.  See id. at p. 14.  However, he was told to rely on over the counter pain medication from the commissary which he purportedly could not always afford.

The Original Complaint was filed in this matter on July 5, 2012.  According to the Amended Complaint, Plaintiff was transferred to USP-Florence during August, 2012.  Although Defendant Allred initially prescribed Peraza pain medication and

ordered an x-ray, Plaintiff's subsequent requests for care were allegedly denied by Defendants Cink and Allred.  Plaintiff's only non-medical claim is an allegation that Defendant Nevill obstructed his right to pursue administrative grievances at USP-Lewisburg.

Defendants responded to the Amended Complaint by filing a motion to dismiss, or in the alternative, for summary judgment. <u>See</u> Doc. 62.  By Order dated September 3, 2014, Plaintiff's motion requesting that disposition of the request for summary judgment be stayed pursuant to Federal Rule of Civil Procedure 56(d) was granted. The Order provided the parties opportunity to respond to any outstanding discovery requests; submit any additional evidence regarding the pending dispositive motion; and/or file any motions to compel discovery.

Thereafter, Plaintiff filed three (3) motions to compel discovery.  In addition to filing responses to the aforementioned motions to compel, Defendants submitted a motion seeking the issuance of a protective order.  This Court subsequently granted the motion and directed that discovery be stayed pending disposition of the pending dispositive motion and the motions to compel were dismissed without prejudice.

## Discussion

Defendants' motion argues that entry of dismissal or summary judgment is appropriate because: (1) the claims against

them in their official capacities are barred by the Eleventh

amendment; (2) Peraza's claims are time barred; (3) a proper

certificate of merit was not filed; (4)  Plaintiff failed to

exhaust his available administrative remedies regarding any of the

deliberate indifference claims; (5) Plaintiff's claim of staff

interference with his institutional grievances is not actionable;

(6) a viable claim of deliberate indifference has not been

alleged; (7) a medical negligence claim has not been established;

and (8) Defendants are entitled to qualified immunity.

**Motion to Dismiss**

        Defendants' pending dispositive motion is supported by

evidentiary materials outside the pleadings.  Federal Rule of

Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or
> 12(c), matters outside the pleading are
> presented to and not excluded by the
> court, the motion must be treated as one
> for summary judgment under Rule 56. All
> parties must be given reasonable
> opportunity to present all the material
> that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

        This Court will not exclude the evidentiary materials

accompanying the Defendants' motion.  Thus, their motion will be

treated as solely seeking summary judgment.[4]  See <u>Latham v. United</u>

---

        [4] As noted by this Court's Order of December 14, 2015,
disposition of the pending summary judgment arguments "may be
resolved without the discovery" sought by the Plaintiff's motions
to compel discovery which were previously stayed. <u>See</u> Doc. 112, p.
2.

States, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered").

**Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Eleventh Amendment**

Defendants' initial argument contends that Plaintiff's action to the extent that it raises Bivens claims for monetary damages against them in their official capacities is barred by the Eleventh Amendment.  See Doc. 65, p. 10.

7

The United States is generally immune from suit absent an explicit waiver of sovereign immunity, United States v. Mitchell, 445 U.S. 535, 538 (1980).  This "immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475  (1994), and extends to government agencies and employees sued in their official capacities.   Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996); Chinchello v. Fenton, 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for constitutional violations." Germosen v. Reno, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.).  Therefore, entry of summary judgment in favor of the individual Defendants is appropriate to the extent that the Complaint asserts Bivens claims against them in their official capacities.

**Statute of Limitations**

Defendants next argue that all of Plaintiff's pending FTCA and Bivens claims are time barred.  Plaintiff counters that his claims should be deemed timely under the continuing violation doctrine.

With respect to the Bivens portion of Plaintiff's action, in reviewing the applicability of the statute of limitations to a civil rights action, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985).  The United

States Supreme Court clarified its decision in <u>Wilson</u> when it held that courts "should borrow the general or residual [state] statute for personal injury actions."  <u>Owens v. Okure</u>, 488 U.S. 235, 250 (1989).

Pennsylvania's applicable personal injury statute of limitations is two years.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1996); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 190 (3d Cir. 1993).  Furthermore, the statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis" of his civil rights claim.  <u>Gentry v. Resolution Trust Corp.</u>, 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

The question of when a cause of action accrues is a question of federal law.  <u>Smith v. Wambaugh</u>, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  A civil rights claim accrues when the facts which support the claim reasonably should have become known to the plaintiff.

The Original Complaint is dated July 5, 2012,[5] and this action will be deemed filed as of that date.  <u>See</u> <u>Houston v Lack</u>, 487 U.S. 266, 271  (1988)(a prisoner's complaint is deemed filed at the time it was given to prison officials for mailing to the Court).  A review of the Amended Complaint shows that it includes multiple claims based on alleged conduct which occurred as far

---

[5]  <u>See</u> Doc. 1, p. 22.

back as 2008. It is apparent that Plaintiff obtained knowledge of the purported violations of his constitutional right to adequate medical care at the time they occurred, specifically when he was released from a hospital allegedly with a recommendation for a followup orthopedic consultation, returned to USP-Big Sandy and was thereafter not provided with the recommended follow up care.[6] However, Peraza  failed to initiate this action within the following two (2) years but rather waited over four (4) years in some instances before seeking relief.

Since Plaintiff's asserts claims based upon multiple acts allegedly taken by a variety of different individuals at separate federal correctional institutions over a period of years which were each actionable on their own, the continuing violation theory is not applicable.  See McCann v. Astrue, 293 Fed. Appx. 848, 850 (3d Cir. 2008).  This determination is bolstered by the fact that Plaintiff began seeking relief with respect to his pending claim by filing an administrative tort claim before he even left USP-Big Sandy in 2008.

Consequently, any civil rights claims raised by Plaintiff regarding actions which transpired more than two years prior to July 5, 2012, are clearly barred by Pennsylvania's controlling statute of limitations.  Among the time barred claims are all

---

[6]  Plaintiff states that he made 7 requests to USP-Big Sandy medical care to be seen by an orthopedic specialist between February-April, 2008.  See Doc. 45, ¶ 33.

allegations pertaining to USP-Big Sandy since he left that
facility on July 14, 2008.  Also precluded from consideration are
the claims pertaining to Peraza's initial USP-Lewisburg
confinement from July 14, 2008 to March 29, 2009. Summary judgment
with respect to the Bivens claims will be granted in favor of the
following USP-Big Sandy Defendants:  N. Helton, P. Cruz, S.
Bhadra, Health Services Administrator P. Runyon, and D, Spradlin.

In regards to Peraza's FTCA claims, the only proper
Defendant for purposes of an FTCA claim is the United States of
America.  See 28 U.S.C. § 2679(d).  Under the FTCA, sovereign
immunity is waived against persons suing the federal government
for the commission of various torts.  See Simon v. United States,
341 F. 3d 193, 200 (3d Cir. 2003).

A plaintiff pursuing an FTCA claim must show: (1) that a
duty was owed to him by a defendant; (2) a negligent breach of
said duty; and (3) that the negligent breach was the proximate
cause of the plaintiff's injury/loss.  Mahler v. United States,
196 F. Supp. 362, 364 (W.D. Pa. 1961).  Except for limited
circumstances, an FTCA claim in federal court is limited to
recovery of the sum certain amount requested in the underlying
administrative claim.  See McMichael v. United States, 856 F.2d
1026, 1035 (8th Cir. 1988).[7]

_____

[7]  Specifically, 28 U.S.C § 2675(b) provides:

Action under this section shall not be instituted for

It is well-settled that a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. 28 U.S.C. § 1346(b) (1996); Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v. Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994); Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987). However, in cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. See 18 U.S.C. § 4042; Turner, 679 F. Supp. at 443. The applicable law with respect to the burden and quantum of proof under the FTCA remains that of the state in which the alleged tortious conduct occurred. Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987). Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. Baum v. United States, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982).[8]

---

> any sum in excess of the claim presented to the federal agency, except where the increased
> amount is based on newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

[8] Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. Hamil v. Bashline, 392 A.2d 1280, 1284 (Pa. 1978).

The statute of limitations for submitting an administrative tort claim to the agency is two (2) years.  See id. at § 2401(b).  A court may not extend the six month time period. See United States v. Kubrick, 444 U.S. 111, 117-18 (1979).  The time limitations contained in the FTCA are jurisdictional in nature. Willis v. United States, 879 F. Supp 889, 892 (C.D. Ill. 1994). Thus, a plaintiff's failure to sue within the period of limitations recognized by § 2401 deprives a court of subject matter jurisdiction.  Ahmed v. United States, 30 F.3d 514 (4th Cir. 1994).

The deadline for seeking judicial review is six (6) months after the agency's final denial of the administrative tort claim. See Pascale v. United States, 998 F. 2d 186 (3d Cir. 1993).  This statute of limitations begins to run from the mailing date of the denial.  Tuttle v. United States Postal Service, 585 F. Supp. 55 (M.D. Pa. 1983), aff'd, 735 F. 2d 1351 (3d Cir. 1984).

As previously discussed Peraza's Original Complaint is dated July 5, 2012 and his action will be deemed filed as of that date.  According to a declaration under penalty of perjury by USP-Allenwood Attorney/Advisor Krista Klett, on May 28, 2008, prior to his transfer from USP-Big Sandy, Plaintiff filed an administrative tort claim regarding the medical care he received at that facility for followup care for his shoulder injury.  The administrative

13

tort claim was denied on February 3, 2009.  <u>See</u> Doc. 66, Exhibit 1, ¶ 7.  Since Plaintiff did not file his instant action within six (6) months after the final denial of that administrative tort claim, this Court agrees that the FTCA claims that staff at USP-Big Sandy provided negligent medical care is untimely and subject to dismissal.

Approximately three years later, on February 8, 2012, Plaintiff filed two similar administrative tort claims regarding the claims pending before this Court with exception of the allegations pertaining to USP-Florence employees Allred and Cink. Both administrative tort claims were dismissed as untimely (one on February 22, 2012 the other on June 12, 2012).  <u>See</u> <u>id</u>. at ¶ 10. Copies of the relevant administrative tort claims and denials accompany Klett's declaration.

As noted earlier, this action was filed on July 5, 2012, less than six months after the denial of the above described administrative tort claims.  However, both of those administrative tort claims were denied as being untimely for not being initiated within two years following the February, 2008 beginning date of the alleged tortious action.

Since Plaintiff left USP-Big Sandy more then two years prior to Plaintiff's February 8, 2012 filing of two similar administrative tort claims this Court agrees that any FTCA claims pertaining to actions occurring at USP-Big Sandy are time barred.

Second, Plaintiff initial USP-Lewisburg confinement from July 14, 2008 to March 29, 2009 was also more than two years prior to the February 8, 2012 administrative tort claims, as such, any FTCA claims pertaining to that period are also time barred.  Third, since the undisputed record shows that no administrative tort claim was filed regarding Plaintiff's care at USP-Florence prior to the initiation of this action, Defendants Allred and Cink are entitled to summary judgment with respect to any FTCA claims.

With respect to the remaining FTCA claims, allegations of negligent medical care at USP-Canaan, USP-Allenwood as well as Plaintiff's second USP-Lewisburg stint could not have been pursued prior to the Plaintiff's arrival at those facilities.  As such, this Court finds that entry of summary judgment with respect to any FTCA claims stemming from those periods on the basis of untimeliness is not appropriate since this action was initiated within six months following the denial of his second and third administrative tort claims.

**Certificate of Merit**

Defendants' next argument contends that Plaintiff's FTCA claims of medical negligence should be dismissed because he failed to file the required certificate of merit.  <u>See</u> Doc. 65, p. 15. Plaintiff contends that a certificate of merit is not required in this matter.  This Court disagrees especially since the Amended Complaint acknowledges that Plaintiff was eventually referred to

15

an orthopedic specialist who allegedly determined that no further surgical treatment was required.

As discussed above, a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. In order to present a prima facie case of medical malpractice /negligence under Pennsylvania state law, a plaintiff has the burden of presenting expert testimony by an appropriate licensed professional who can testify to a reasonable degree of medical certainty that the actions or omissions of the defendant deviated from acceptable medical standards, and that said deviation constituted a substantial factor in causing the Plaintiff's injury. Simpson v. Bureau of Prisons, 2005 WL 2387631 *5 (M.D. Pa. Sept. 28, 2005)(Vanaskie, C.J.).[9]

Pennsylvania Rule of Civil Procedure 1042.3 requires a person who brings a claim of medical malpractice/negligence to file an appropriate certificate of merit either with the complaint or within sixty (60) days thereafter. The Rule 1042.3 certificate must certify that either: (1) an appropriate licensed professional

---

[9] The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons." Berman v. United States, 205 F. Supp. 2d 362, 364 (M.D. Pa. 2002) (citing Brannan v. Lankenau Hospital, 490 Pa. 588 (1980). However, the instances when expert opinions may be unnecessary are rare. See Simpson, 2005 WL *6; Arrington v. Inch, 2006 WL 860961 *7 (M.D. Pa. March 30, 2006) (Conner, J.).

has supplied a written statement that there exists a reasonable probability that the conduct which is the subject of the complaint fell outside acceptable professional standards and was a cause in bringing about the harm; (2) the claim of deviation by defendant from an acceptable professional standard is based solely upon allegations that other licensed professionals for whom defendant is responsible deviated from an acceptable professional standard; (3) expert testimony of an appropriate licensed professional is unnecessary.

Courts within this circuit have recognized that Rule 1042.3 is substantive law and should be applied by federal courts sitting in diversity. Schwalm v. Allstate Boliler & Construction, 2005 WL 1322740 *1 (M.D. Pa. May 17, 2005)(Caputo, J.); Scaramuzza v. Sciolla, 345 F. Supp. 2d 508, 509-10 (E.D. Pa. 2004). It has also been held that a Plaintiff pursuing an FTCA claim must comply with Pennsylvania substantive law. Arrington, 2006 WL 860961, at *7. In addition, Plaintiff's incarceration or pro se status is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of coming forth with expert medical testimony. See Perez v. Griffin, 2008 WL 2383072 *3 (M.D. Pa. June 9, 2008)(Rule 1042.3 applies to incarcerated and pro se plaintiffs and constitutes a rule of substantive state law to which plaintiffs in federal court must comply).

Since Peraza has not submitted a proper Rule 1042.3 certificate of merit or otherwise indicated that he has retained an expert witness, it is appropriate for this court to dismiss all of his pending FTCA medical malpractice/negligence claims without prejudice.  See Osorio v. United States, 2007 WL 2008498 *2 (W.D. Pa. July 5, 2007); see also Henderson v. Pollack, 2008 WL 282372 *4 (M.D. Pa. Jan 31, 2008)(Caldwell, J.)(citing Hartman v. Low Security Correctional Institution, Allenwood, 2005 WL 1259950 * 3 (M.D. Pa. May 27, 2005)(Muir, J.).[10]

**Grievance Policy**

The Amended Complaint contains an allegation that Defendant Nevill obstructed Peraza's right to pursue administrative grievances at USP-Lewisburg.  Defendants argue that Administrative Remedy Coordinator Nevil is entitled to entry of summary judgment as prisoners enjoy no constitutional right to a grievance policy.  See  Doc. 65, p. 22.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the

---

[10]   In light of this determination as well as the non-exhaustion and untimeliness arguments set forth below, Defendant's remaining argument that Plaintiff's medical negligence FTCA claims lacks merit will not be addressed.

United States.  See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

It is well settled that inmates do not have a constitutional right to a prison grievance system.  See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

Consequently, any attempt by Plaintiff to establish liability against Defendant Nevil solely based upon a claim that said official interfered with his right to pursue an administrative grievance does not by itself support a constitutional due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). Summary judgment will be granted in favor of Defendant Nevil.  See Heleva v. Kramer, 214 Fed. Appx. 244, 247 (3d Cir. 2007)

(obstruction of grievance procedure is not independently

actionable).[11]


**USP-Florence Defendants**

  The Amended Complaint appears to seek monetary damages

against the Defendants in their individual capacities.  In Micklus

v. Carlson, 632 F.2d 227, 240-41 (3d Cir. 1980), the Court of

Appeals for the Third Circuit recognized that under Stafford v.

Briggs, 444 U.S. 527 (1980), the provisions of 28 U.S.C. §

1391(e)[12] are inapplicable to claims for monetary damages against

---

  [11] Plaintiff counters that Nevill's conduct was retaliatory but he fails to provide any evidence that his exercise of a constitutional right was a substantial or motivating factor in the challenged conduct as required under Rauser v. Horn, 241 F.3d 330, 333 (2001).  As such, his retaliation argument lacks merit.

  [12] § 1391(e) provides in relevant part:

  A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.  Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

federal officials when the individual officeholder may be found personally liable.[13]  See also  Robinson v. Weiss, Civ. A. 99-3964, 2000 WL 231905 *2-3 (E.D. Pa. Feb. 18, 2000)(venue provisions of § 1391(e) do not apply to actions for money damages against federal officials in their personal capacities).

The pertinent statutory provision concerning the proper federal court in which a Bivens lawsuit may be brought, 28 U.S.C. § 1391(b), provides that "[a] civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may be otherwise brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

The two USP-Florence officials named as Defendants in the Amended Complaint do not reside within the Commonwealth of Pennsylvania.  The filing of the claims against the USP-Florence

---

[13] The Court of Appeals in Micklus explained that if § 1391(e) could be employed in actions for money damages against federal officials individually, such defendants "solely by reason of their government service" would be placed "in a very different posture in personal damage suits from that of all other persons." Id. at 491.

Defendants in this Court are not based upon diversity of citizenship jurisdiction.  There is nothing to indicate that the USP-Florence Defendants purposefully directed their activities to Pennsylvania or can otherwise be found in Pennsylvania as contemplated under 28 U.S.C. § 1391(b)(3).  Moreover, none of the events giving rise to Plaintiffs' claims against those Defendants occurred in the Middle District of Pennsylvania.

There are also no facts asserted from which it can be inferred that the two USP-Florence Defendants are subject to personal jurisdiction in Pennsylvania.  As explained in <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1217-18 (10th Cir. 2006):

> The exercise of jurisdiction over a nonresident defendant comports with due process "'so long as there exists minimum contacts between the defendant and the forum State.'"  The minimum contacts necessary for specific personal jurisdiction may ne established where the "defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."

There is nothing to indicate that any of the USP-Florence Defendants purposefully directed their activities to Pennsylvania or can otherwise be found in Pennsylvania.  There is also no suggestion that Plaintiff's claims are based upon activities that arise out of or are related to those USP-Florence Defendants' contacts with Pennsylvania.

Since Plaintiff's pending action seeks compensatory damages against the individual Defendants in their individual

capacities, under the requirements of § 1391(b), Plaintiff cannot maintain an action against the USP-Florence Defendants in this Court.  See Greer v. Safeway, No. 09-4007, 2009 WL 754769 (10th Cir. March 24, 2009) (affirming sua sponte dismissal of in forma pauperis action where it was clear that defendants were not subject to personal jurisdiction in Utah); Trujillo, 465 F.3d at 1217 (affirming authority of court to dismiss action where absence of personal jurisdiction is obvious).

Consequently, venue does not lie in this Court with respect to the civil rights claims against the USP-Florence Defendants.[14]

**Administrative Exhaustion/Bivens**

Defendants' next argument contends that Plaintiff failed to properly exhaust his administrative remedies concerning most of his allegations of deliberate indifference to his medical needs.[15] See Doc. 65, p. 19.  In support of their argument they have submitted a declaration under penalty of perjury by USP-Allenwood Paralegal Specialist Susan Albert.  See Doc. 66, Exhibit 2.

Section 1997e(a) of title 42 U.S.C. provides:

---

[14]  This determination is equally applicable to the Bivens claims against the USP-Big Sandy individual Defendants and provides an alternative basis for entry of summary judgment in their favor.

[15]  They concede that Peraza exhausted his claims of denial of proper medical care at USP-Florence.  However, this Court has already determined that those claims should not proceed.

> No action shall be brought with respect
> to prison conditions under Section 1979
> of the Revised Statutes of the United
> States (42 U.S.C. 1983), or any other
> federal law, by a prisoner confined in
> any jail, prison, or other correctional
> facility until such administrative
> remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  Claims for monetary relief are not excused from the exhaustion requirement.  Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action.  Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 127 S.Ct. 910, 923 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily

24

resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id.  The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230.  It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id.  Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

The BOP has a well established three (3) step Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment. See 28 C.F.R. §§ 542.10-542.19.  After attempting to informally resolve the issue, a BOP inmate can initiate the first step of the grievance process by submitting  "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within twenty (20)  calendar days "following the date on which the basis for the Request occurred." See  28 C.F.R. § 542.14(a).  The Warden has twenty (20) calendar days from the date the Request or Appeal is filed in which to

respond." See 28 C.F.R. § 542.18. If not satisfied with the Warden's response, an inmate may appeal (step two) on the appropriate form (BP-10) to the Regional Director within twenty (20) calendar days of the date the Warden signed the response. See 28 C.F.R. § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed (step three) on the appropriate form (BP-11) to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (citing Nyhuis, 204 F.3d at 75. A later decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones v. Bock, 549 U.S. 199, 216 (2007); see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his

complaint that he has exhausted administrative remedies).  Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d  568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[16] Consequently, any failure by Plaintiff to allege or establish compliance with the exhaustion requirement is not by itself a sufficient basis for entry of dismissal under the criteria established in Jones and Williams.

According to Albert's declaration, Plaintiff has filed a total of 135 administrative grievances while in BOP Custody.  See Doc. 66, Exhibit 2, ¶ 3.  Ninety-one of Peraza's grievances were rejected.  Albert asserts that according to BOP records Plaintiff did initiate grievances regarding his issues of chronic shoulder pain and interference with the grievance procedure.  However, those filings were rejected for failure to comply with proper procedure.  Since the undisputed record provided by the Defendants shows that Plaintiff failed to properly exhaust his administrative remedies with respect to his pending Bivens claims (with exception of those asserted against the USP-Florence defendants) entry of summary judgment is appropriate.[17]

---

[16] In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

[17] Since this action before Plaintiff was even transferred to USP-Florence, Plaintiff failed to comply with the requirement

27

Moreover, assuming <u>arguendo</u> that Peraza's contention of staff interference has created an issue of material fact with respect to the issue of whether entry of summary judgment is appropriate for failure to exhaust administrative remedies, it is apparent for the reasons set forth below that a viable civil rights allegation has not been raised in the Amended Complaint.

## **Deliberate Indifference**

Defendants contend that "Peraza fails to allege specific actions committed by each defendant that violated his constitutional rights, and therefore, he fails to state a constitutional claim." Doc. 65, p. 25.  This Court has already determined that the claims against the USP-Big Sandy and USP-Florence defendants should not proceed.

A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of his constitutional rights.  <u>Gay v. Petsock</u>, 917 F.2d 768, 771 (3d Cir. 1990).  This is the personal involvement requirement.

Federal civil rights claims brought under § 1983 cannot be premised on a theory of <u>respondeat</u> <u>superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976);

---

that administrative remedies be exhausted prior to filing suit.

Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir.

1976).  As explained in Rode:

> A defendant in a civil rights action must
> have personal involvement in the alleged
> wrongs. . . .  [P]ersonal involvement can be
> shown through allegations of personal
> direction or of actual knowledge and
> acquiescence.  Allegations of participation
> or actual knowledge and acquiescence,
> however, must be made with appropriate
> particularity.

Rode, 845 F.2d at 1207.

A prison official violates the Eighth Amendment when he

acts with deliberate indifference to a known objectively serious

risk to a prisoner's health or safety.  See Farmer, 511 U.S. at

837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).

This requirement of actual knowledge means that "the official must

both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also

draw the inference."  Farmer, 511 U.S. at 837.

The Eighth Amendment "requires prison officials to provide

basic medical treatment to those whom it has incarcerated."  Rouse

v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v.

Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth

Amendment medical claim, an inmate must allege acts or omissions

by prison officials sufficiently harmful to evidence deliberate

indifference to a serious medical need.  See Spruill v. Gillis,

372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty.

29

Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).  Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the serious medical need requirement, based upon Plaintiff's assertions that he suffered a fractured scapula and a punctured left lung, this Court will presume for purposes of this discussion that the serious medical need requirement has been satisfied.

30

In regards to the subjective deliberate indifference component of Estelle, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

**Defendant Navarro**

Ivan Navarro was employed as a Mid Level Practitioner at USP-Lewisburg when Plaintiff was confined at that facility between

October 8, 2008 and March 24, 2009.  Navarro retired on September 30, 2011.

This Court has already determined that any claims stemming from this period of confinement are time barred.  A review of the Amended Complaint show that there are no specific factual allegations directed against Navarro.  In addition, based upon the a declaration under penalty of perjury provided by Navarro, said Defendant provided treatment to Plaintiff on four separate dates during that period.  See Doc. 66-13.  Navarro treated Peraza in part for some unrelated medical issues--the flu, acne, and blood pressure.  Navarro also saw Plaintiff for a complaint of clavicle area pain.  The Defendant ordered the taking of x-rays, prescribed and later renewed pain medication, and treated the inmate.

In light of the undisputed facts that Navarro provided Plaintiff timely and appropriate care and any claims against him simply represent Plaintiff's disagreement with the quality of the care he was provided with, Plaintiff's allegations are not properly raised in a civil rights action.  Defendant Navarro is entitled to entry of summary judgment.

**USP-Allenwood Defendants Holtzapple and Buschman**

Jennifer Holtzapple is employed as a Physician's Assistant at USP-Allenwood.  Brian Buschman is employed as a USP-Allenwood physician who was responsible for supervision of mid-level providers.  As established by Holtzapple's supporting

32

declartations and the submitted copies of Plaintiff's institutional medical records, both Defendants provided treatment to Plaintiff on multiple dates during the course of his incarceration at that facility.  See Docs. 66-15; 66-16.  Once again, the Amended Complaint includes no specific factual assertions directed against either Hotzapple or Buschman.

The undisputed record shows that Holtzapple saw Plaintiff in response to his complaints of shoulder pain and renewed the inmate's prescription for Naproxen for pain.  Many of Plaintiff's contacts with Holtzapple were chronic care visits where Plaintiff voiced complaints regarding his mental health issues and as such are not related to the claims before this Court.  Defendants acknowledge that Doctor Buschman treated Plaintiff for bi-polar disorder, acne, and a sore throat.

There are no discernible allegations that either Holtzapple or Buschman failed to provide or delayed any prescribed or necessary treatment. There are no facts presented which would show that those two medical providers made a determination that Plaintiff required an outside orthopedic consultation and failed to make the necessary arrangements.  As previously noted, the general allegations of negligent treatment set forth in the Amended Complaint, at best, are medical malpractice claims, which do not trigger constitutional protections.  Due to the vagueness of the Amended Complaint and the undisputed fact that Peraza was

33

clearly provided with regular medical care at USP-Allenwood,
Plaintiff's factually unsupported claims against Defendants
Holtzapple and Buschman simply represent his disagreement with
determinations/assessments by those Defendants and as such there
is no discernible basis for a claim of deliberate indifference.

**USP-Canaan Defendants Kaiser and Holloway**

It is undisputed that Plaintiff was incarcerated at USP-
Canaan from April 28, 2011 to August 11, 2011. PA K. Kaiser and
Doctor Daniel Holloway who were employed at USP-Canaan during the
relevant time period are also named as Defendants.  Both officials
have submitted supporting declarations.  See Doc. 66-17 & 66-18.

During Plaintiff's approximately four month long stay at
USP-Canaan, he was involved in several altercations with both
staff and other prisoners.  As a result, Peraza required two
outside hospital visits.  Specifically, following a May 11, 2011
incident, Plaintiff was initially seen by Kaiser and thereafter
transported to a local hospital that same day for additional
treatment.  On May 17, 2011, Kaiser requested an x-ray for a left
ankle injury suffered by Peraza.  During a subsequent appointment,
Kaiser prescribed medication to the Plaintiff after he complained
of left shoulder pain.

Doctor Holloway saw the Plaintiff once, for a chronic care
appointment.  Doctor Holloway prescribed Indomethacin in response
to Plaintiff's complaint of low level left shoulder pain.  As was

34

the case with the USP-Allenwood Defendants, this is not a case where Peraza was denied medical attention.  Rather, during his relatively brief USP-Cannan confinement the Plaintiff twice received treatment at outside hospitals, underwent an x-ray, and was prescribed pain medication.  Once again Plaintiff's claim of mistreatment at this correctional facility appear to be nothing more than assertions of negligent medical care which are not properly asserted in a civil rights complaint.

**USP-Lewisburg Defendants Pigos and Fasciana**

Plaintiff was transferred from USP-Canaan back to USP-Lewisburg on August 11, 2011.  He remained at that facility until his August 23, 2012 transfer to USP-Florence.  Among the named Defendants are Doctor Kevin Pigos and Mid Level Practitioner Fasciana.  Those Defendants have submitted supporting declarations[18] which acknowledge that Peraza was seen ten times by Fasciana with three of those visits occurring in response to the inmate's complaints of dizziness.  The remaining visits were for the purposes of renewing Plaintiff's prescriptions for Naproxen and Ibuprofen.

Defendants also assert that during this stay an x-ray of Plaintiff's houlder was taken and Doctor Pigos ordered a consultation whith an orthopedic surgeon, Doctor Ball, which

---

[18]   See Docs. 66-19 & 66-20.

35

transpired on June 13, 2012.  <u>See</u> Doc. 66-19, ¶ 14.  Ball
recommended only treatment with Motrin and a back injection.

Once again the undisputed facts show that Plaintiff was
provided with treatment for his shoulder condition while at USP-
Lewisburg.  This treatment included the taking of x-rays and
providing Plaintiff with the orthopedic consultation which is the
basis for his pending allegation of deliberate indifference.
Accordingly, since Plaintiff was provided with the initially
recommended followup orthopedic evaluation at this facility, there
is no basis for a claim of deliberate indifference.

**Qualified Immunity**

Qualified immunity is an affirmative defense which must be
pleaded by the defendant official.  <u>Verney v. Pennsylvania
Turnpike Comm'n</u>, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In <u>Harlow
v. Fitzgerald</u>, 457 U.S. 800 (1982), the United States Supreme
Court held "that government officials performing discretionary
functions generally are shielded from liability for civil damages
insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person
would have known."  <u>Id</u>. at 818; <u>Sherwood v. Mulvihill</u>, 113 F.3d
396, 398-99 (3d Cir. 1997); <u>Showers v. Spangler</u>, 957 F. Supp. 584,
589 (M.D. Pa. 1997).  It has also been held that "qualified
immunity is coextensive for suits brought against state officials
under 42 U.S.C. § 1983 (1982), and for suits brought directly

under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

Since this Court has determined that the Amended Complaint fails to set forth facts which could support that a constitutional violation occurred, further discussion of this argument is not warranted.

**Conclusion**

37

Plaintiff's <u>Bivens</u> and FTCA claims pertaining to his USP-Big Sandy and his initial USP-Lewisburg confinement from July 14, 2008 to March 29, 2009 are time barred.  Second, all of Peraza's FTCA claims are subject to dismissal for his failure to file the required certificate of merit.

Plaintiff's <u>Bivens</u> claims for monetary damages against the individual Defendants in their official capacities are barred by the Eleventh Amendment.  Accordingly, summary judgment will be granted in favor of the following USP-Big Sandy Defendants:  N. Helton, P. Cruz, S. Bhadra, Health Services Administrator P. Runyon, and D, Spradlin.

Summary judgment will also be granted in favor of Defendant Nevil since Peraza had no constitutional right to a grievance procedure.  In addition, the USP-Florence and USP-Big Sandy Defendants are not subject to personal jurisdiction in this district.

Finally, the Amended Complaint fails to adequately set forth supporting facts which could support a claim that any of the individual Defendants were deliberately indifferent to his medical needs.  This is not a case where surgery was ever recommended or ordered.  Rather, Plaintiff's initial treating doctor simply recommended a followup evaluation.  This evaluation was eventually provided.  The undisputed record clearly shows that Plaintiff has suffered from a variety of physical and mental health problems

38

during the course of his federal confinement.  Peraza has been provided with regular care at every facility where he has been housed.  The vague allegations set forth in the Amended Complaint simply do not provide a sufficient factual basis for a claim of deliberate indifference against any of the named Defendants.  The motion for summary judgment will be granted.  An appropriate Order will enter.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: NOVEMBER 1 , 2016